1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   LETICIA S. HARRIS,              )    Case No. CV 06-621-PJW
                                     )
11             Plaintiff,            )
                                     )
                                     )    MEMORANDUM OPINION AND ORDER
12        v.                         )
                                     )
13   JO ANNE B. BARNHART,            )
     Commissioner of the Social      )
14   Security Administration,        )
                                     )
15             Defendant.            )
     _____)

16

17                                   I.

18                              INTRODUCTION

19        Plaintiff brings this action, seeking reversal of the decision by

20   defendant Social Security Administration ("the Agency"), denying her

21   application for Disability Insurance Benefits ("DIB").  She asks the

22   Court to reverse the Agency's decision and award benefits, or, in the

23   alternative, to remand the case to the Agency for further proceedings.

24   For the reasons discussed below, the Agency's decision is REVERSED and

25   the action is REMANDED for further proceedings consistent with this

26   opinion.

27

28

II.

BACKGROUND FACTS

A.   Plaintiff's Personal History and Work History

Plaintiff was born on July 29, 1961, and was 41 years old at the time of the hearing. (Administrative Record ("AR") 76.) She completed high school. (AR 584.) She previously worked as a processing clerk between 1984 and 1995.[1] (AR 87-88.) Plaintiff has suffered from rheumatoid arthritis since the age of 11 or 12. (AR 587.) Plaintiff contends a workplace injury in the early 1990s caused her condition to deteriorate, leaving her unable to work at all since September 9, 1995. (AR 587.)

B.   Plaintiff's Medical Condition and Treatment

In her application for DIB, Plaintiff stated that she suffered from rheumatoid arthritis, osteoarthritis, fibromyalgia, and migraine headaches. (AR 106.) Plaintiff claimed that her condition limited her ability to work because she is in pain and because she has limited use of her hands in lifting and reaching. (AR 106.)

Plaintiff's medical records show that she suffers from rheumatoid arthritis that causes multiple joint pain, osteoarthritis, migraines, and muscle spasms. (AR 229, 246, 266.) Plaintiff takes various prescription medications for swelling, pain, and migraines.[2]

---

[1]   Plaintiff also worked part-time as a food server for a period of six or seven months in 2000 and 2001. (AR 585-86). The administrative law judge found that this work did not constitute substantial gainful activity. (AR 25.)

[2]   State agency physician Dr. Enriquez noted that, as of September 25, 2001, Plaintiff was taking Propranolol, diclofenac, piroxicam, hydrocodone, methotrexate, Allegra, temazepam, carisoprodol, folic acid, Prevacid-D, clotrimazloe, and Imitrex nasal. (AR 267.)

2

1    On August 1, 2000, Plaintiff was examined by state agency
2 physician Dr. Tu Tranvan. (AR 208.) Dr. Tranvan performed an
3 internal evaluation and diagnosed juvenile rheumatoid arthritis and
4 migraines. (AR 208-12.) Dr. Tranvan noted a list of 12 medications
5 that Plaintiff was taking. (AR 209.)

6    On November 4, 2000, state agency physician Dr. Rajeswari Kumar
7 performed an orthopedic evaluation. (AR 246-51.) Dr. Kumar found
8 that Plaintiff's gait was normal and that she had a slightly reduced
9 range of motion in her neck and back but not elsewhere. (AR 248.)
10 Dr. Kumar found some tenderness in Plaintiff's lower back and hands.
11 (AR 248-50.) X-rays revealed no bony or soft tissue pathology. (AR
12 250.)

13    On September 25, 2001, state agency physician Dr. Concepcion
14 Enriquez performed an internal evaluation of Plaintiff, including a
15 review of Plaintiff's medical records and a physical examination. (AR
16 266-70.) Dr. Enriquez found a normal range of motion of the cervical
17 spine but tenderness in the lumbosacral spine with a decreased range
18 of motion, tenderness and a decreased range of motion in the left
19 shoulder, and tenderness in various joints. (AR 268-70.)

20    On September 25, 2001, state agency psychiatrist Dr. Ernest
21 Bagner performed an evaluation of Plaintiff. (AR 261-65.) Plaintiff
22 reported depression with crying spells, anxiety, and low energy since
23 1995. (AR 261.) Dr. Bagner noted the lack of psychiatric medical
24 records. (AR 262.) Dr. Banger diagnosed depressive disorder, not
25 otherwise specified, and found that Plaintiff would be able to
26 interact with a supervisor, carry out simple three-part commands,
27 likely carry out repetitive tasks, and handle the moderate degree of
28 stress to be found in a typical work environment. (AR 264.)

3

1  C.   The Administrative Proceedings

2      Plaintiff filed her first application for DIB on July 14, 1997.

3  (AR 43.)  On June 2, 1999, her application was denied by an

4  administrative law judge ("ALJ").  (AR 43.)  Plaintiff appealed the

5  ALJ's decision, and the Appeals Council remanded the matter to the

6  ALJ.  (AR 44.)  After a new hearing on February 20, 2001, the ALJ

7  again denied Plaintiff's application in a written decision dated May

8  9, 2001.  (AR 43-49.)  Plaintiff did not seek further review of that

9  decision.

10     On July 9, 2001, Plaintiff protectively filed a second

11  application for DIB.  (AR 76-78.)  After the application was denied

12  initially and on reconsideration, a hearing was held on May 14, 2003,

13  before a different ALJ than the one who had previously denied her

14  application.  (AR 581-613.)

15     At that hearing, Plaintiff testified that she had not worked for

16  four or five years due to her arthritic condition.  (AR 585.)  After

17  prompting by the ALJ, Plaintiff admitted that in 2000 and 2001 she had

18  worked 10-15 hours a week for six or seven months serving lunches at a

19  private school.  (AR 585-86.)

20     Plaintiff testified that rheumatoid arthritis causes her joints

21  to swell painfully, gives her back spasms, and, since 2002, has

22  required her to undergo regular mild chemotherapy by means of an

23  infusion.  (AR 587-89.)  Additionally, Plaintiff testified that she

24  takes various medications to control the swelling and for pain and

25  that these medications make her drowsy.[3]  (AR 590.)  Although the

26  _____

27      [3]  Plaintiff testified that she took Inderal for the joint
   swelling and Imitrex for migraines, as well as Vicodin, Restoril,
28  DayQuil, and Methotrexate.  (AR 591.)

4

medications were helping, Plaintiff testified that she still suffers from stiffness in the morning lasting four hours and that she can begin her daily routine only after that time.  (AR 592-593.) Plaintiff further testified that after an infusion she feels weak and is bed-ridden for three days.  (AR 598.)  Approximately once a month her migraines are so painful that she has to self-administer a shot or go to hospital to be given morphine.  (AR 598.)

On June 27, 2003, the ALJ issued a decision denying Plaintiff's application for DIB.  (AR 24-30.)  As a preliminary matter, the first ALJ found that Plaintiff had failed to prove "changed circumstances indicating a greater disability" for the period since the first ALJ's decision in May 2001 denying benefits.  Therefore, the ALJ held that, under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the first ALJ's findings were res judicata as to all claims previously adjudicated. (AR 25.)

Thereafter, the ALJ analyzed Plaintiff's claims under the Agency's five-step sequential evaluation process.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (AR 29.)  At step two, he found that Plaintiff had a severe impairment--juvenile rheumatoid arthritis--and a non-severe impairment--depression not otherwise specified.  (AR 28, 29.)  At step three, he determined that the impairments, alone or in combination, did not meet or equal a Listed impairment.  (AR 29.)

The ALJ then "adopted" the residual functional capacity findings previously made by the first ALJ--that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  The ALJ also found that Plaintiff could stand, walk, or sit for approximately three hours each in an eight-hour workday, with only occasional stooping,

crouching, crawling, kneeling, climbing, and reaching.[4]  (AR 27.)  The
ALJ found no other limitations on Plaintiff's residual functional
capacity.  In particular, the ALJ found that Plaintiff did not have a
severe mental impairment that would impose non-exertional restrictions
other than mild difficulties in maintaining concentration,
persistence, or pace.  (AR 27-28.)  Significantly, the ALJ rejected
Plaintiff's subjective symptom testimony, finding Plaintiff not
credible for three reasons.  First, he found that Plaintiff had failed
to mention her part-time work in 2000 and 2001 to Agency physicians or
to the ALJ at the hearing until asked about it by the ALJ.  Second, he
determined that Plaintiff gave different accounts about her cigarette
use.  And third, he found that Plaintiff's daily activities were
inconsistent with her allegations of pain and limitations.  (AR 28.)

     The ALJ concluded that Plaintiff had the residual functional
capacity to perform light work with the additional exertional
restrictions just described.  (AR 29.)  He then concluded, consistent
with the vocational expert's testimony, that Plaintiff could not
return to her past work given these restrictions.  (AR 28, 29.)

     At step five, the ALJ relied on the vocational expert's testimony
that an individual of Plaintiff's age, education, and experience, who
could perform light work with the restrictions previously described,
would be able to perform the work of information clerk.  (AR 28, 605.)
Because the vocational expert testified that a significant number of
jobs exist in the national economy that Plaintiff could perform, the
ALJ found that Plaintiff was not disabled as defined in the Social

_____

     [4]  These findings were more restrictive than the findings by the
previous ALJ.  (AR 46.)

6

1  Security Act.  (AR 29.)  Plaintiff requested that the Appeals Council
2  review the ALJ's decision.  (AR 19.)  On December 16, 2005, the
3  Appeals Council denied Plaintiff's request for review.  (AR 5-8.)
4  Plaintiff then filed the instant Complaint.

5                               III.

6                             ANALYSIS

7      Plaintiff argues that the ALJ erred when he: (1) found that
8  Plaintiff could perform the work of an information clerk, (2) failed
9  to properly consider the limitations caused by Plaintiff's non-severe
10 mental impairment, (3) failed to adopt the exertional limitations
11 found by the first ALJ, and (4) failed to articulate legitimate
12 reasons for rejecting Plaintiff's subjective symptoms testimony.
13 (Joint Stipulation ("JS") at 4.)  For the following reasons, the Court
14 affirms the ALJ's decision with respect to the first three claims of
15 error, but reverses on the fourth.

16 A.  Standard Of Review

17     "Disability" under Agency regulations is defined as the inability
18 to perform any substantial gainful activity due to any "medically
19 determinable physical or mental impairment which can be expected to
20 result in death or which has lasted or can be expected to last for a
21 continuous period of not less than 12 months."  *See* 42 U.S.C.
22 § 423(d)(1)(A).  The Court may overturn the ALJ's decision that a
23 claimant is not disabled only if it is not supported by substantial
24 evidence or if the decision is based on legal error.  *Magallanes v.*
25 *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)(quoting *Green v. Heckler*, 803
26 F.2d 528, 529 (9th Cir. 1986)).  "Substantial evidence" is such
27 "relevant evidence as a reasonable mind might accept as adequate to
28 support a conclusion."  *Magallanes*, 881 F.2d at 750.  It is "more than

                                  7

1  a mere scintilla but less than a preponderance." *Tidwell v. Apfel*,
2  161 F.3d 599, 601 (9th Cir. 1998).  This Court must uphold the ALJ's
3  conclusion even if the evidence in the record "is susceptible to more
4  than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035,
5  1039-40 (9th Cir. 1995).

6  B.   <u>Substantial Evidence Supports the ALJ's Finding that Plaintiff</u>
7       <u>Could Perform Work as an Information Clerk</u>

8       In her first claim of error, Plaintiff argues that the ALJ found
9  that Plaintiff did not have transferable skills that would enable her
10 to perform the jobs of information clerk (hereinafter "scheduler") or
11 "information clerk at the sedentary level" (hereinafter "information
12 clerk").  (JS at 5-6.)  In her third claim of error, Plaintiff argues
13 that the ALJ was obliged to accept the previous factual finding made
14 by the first ALJ that Plaintiff was restricted to no reaching with her
15 upper extremity, thus precluding her from both jobs identified by the
16 vocational expert.  (JS at 16-17.)  Because both these claims call
17 into question the ALJ's factual findings regarding Plaintiff's
18 residual functional capacity, they are addressed together.  Before
19 getting to these claims, however, the Court must first determine the
20 effect of the May 9, 2001 decision on the Agency's most recent
21 decision.

22      As noted earlier, the ALJ concluded that res judicata applied to
23 Plaintiff's claims because Plaintiff had failed to prove changed
24 circumstances, indicating a greater disability, since the May 2001
25 decision.  (AR 25.)  Despite this statement, it is clear that the ALJ
26 did not consistently apply res judicata to the earlier findings.
27 First, in limiting Plaintiff to only "occasional stooping, crouching,
28 crawling, kneeling, climbing, and reaching," (AR 27, 29), the ALJ

1  explicitly found greater exertional restrictions than the prior ALJ,

2  who found only that Plaintiff was limited to occasional or no

3  reaching.  (AR 46, 48.)  Second, the ALJ appeared to reject the first

4  ALJ's finding that Plaintiff had transferable skills from her past

5  work.  (AR 29, 48.)

6      Although the general rule is that the "ALJ must follow the

7  doctrine of res judicata on the issues adjudicated in a previous

8  claim," *Winters v. Barnhart*, 2003 WL 22384784, at *4 (N.D. Cal. Oct.

9  15, 2003)(citing *Chavez*), it seems clear that no res judicata

10  presumption can apply here where the ALJ made his own findings of

11  greater limitations, and thus implicitly accepted some degree of

12  changed circumstances in Plaintiff's condition.[5]

13      Plaintiff's contention that the ALJ found that she had no

14  transferable skills is incorrect.  It is true that the ALJ made

15  conflicting statements regarding Plaintiff's transferable skills.  In

16  his "Findings," the ALJ stated that Plaintiff "does not have . . .

17  work skills which are transferable to the skilled or semiskilled work

18

19      [5]  Even if the ALJ's statement regarding res judicata was

20  erroneous, any such error was harmless.  First, his findings are
   substantially supported by the record, except as otherwise noted.

21  Second, his findings favor Plaintiff in finding greater limitations on

22  her ability to work, thus distinguishing her situation from that
   presented in *Lyle v. Sullivan*, 1992 WL 227757 (W.D. Ky. June 22, 1992)

23  (holding that initial determination that claimant was restricted to
   "sedentary" exertion precluded subsequent unilateral "redetermination"

24  by second ALJ that claimant could perform light work).

25      The Court further notes that Plaintiff attempts to have it both

26  ways.  In her first claim of error, she argues that res judicata
   should not apply to the finding that she has transferable skills.  (JS

27  at 4-6.)  Yet, in her third claim of error, she argues that res
   judicata should apply to the first ALJ's finding that she was limited

28  to no reaching.  (JS at 16-17.)

functions of other work." (AR 29.)  In the body of his decision,
however, the ALJ credited the testimony of the vocational expert who
had "characterized [Plaintiff]'s past work as . . . semi-skilled," and
who had testified that a hypothetical individual with Plaintiff's
background could perform jobs at the semi-skilled level. (*Id*.)  More
significantly, the vocational expert testified that Plaintiff's former
employment "has transferability of skills to other light work." (AR
605.)  In propounding his own hypothetical to the vocational expert,
Plaintiff's counsel assumed that "there would be transferable skills
to a light semi-skilled information clerk, as well as a sedentary
information clerk." (AR 610.)  The ALJ's ultimate finding that jobs
exist in the national economy for someone with Plaintiff's background
and restrictions is therefore supported by substantial evidence in the
record.

Plaintiff argues that she cannot perform the job of "scheduler"
because, as described in the Dictionary of Occupational Titles,
§ 238.367-034, it requires "frequent reaching."  The Court agrees.
The ALJ found that Plaintiff is limited to occasional reaching. (AR
29.)  Thus, she is not capable of performing this job.  Further, the
vocational expert provided no reason for departing from the DOT job
requirements.  For this reason, his testimony on this issue does not
constitute substantial evidence to support the ALJ's finding.  Even
so, this error is harmless because Plaintiff could still perform the
work of information clerk, DOT § 237.367-022, which requires only
occasional reaching and which exists in significant numbers in the
economy, according to the vocational expert's uncontroverted
testimony. (AR 605.)  Thus, any error on the ALJ's part was harmless.

1   Plaintiff's third claim is that the ALJ erred in failing to adopt
2   the limitation of "no reaching" found by the first ALJ.  (JS at 16-
3   17.)  For the reasons just given, res judicata does not apply to this
4   finding because the second ALJ implicitly found changed circumstances
5   were present.[6]  He was thus free to make his own findings regarding
6   Plaintiff's limitations.  His finding that Plaintiff was restricted to
7   "occasional" reaching is supported by the weight of the medical
8   evidence (because none of the doctors (Dr. Kumar, Dr. Enriquez, or Dr.
9   Trunvan) found any limitation on reaching) and is affirmed.  (AR 212,
10  251, 270.)

11  C.   The ALJ Properly Rejected the "Limitations" Caused by Plaintiff's
12       Non-Severe Mental Impairment

13  In her second claim for relief, Plaintiff contends that the ALJ
14  erred in failing to consider limitations caused by her depressive
15  disorder as found by Dr. Ernest Bagner.  Dr. Bagner conducted a mental
16  status examination and reported that Plaintiff "is unable to do serial
17  sevens but she can do serial threes successfully."  (AR 263.)  Dr.
18  Bagner concluded that Plaintiff "was able to carry out simple three-
19  part commands and would likely be able to carry out repetitive tasks."
20  (AR 264.)  Plaintiff contends that the ALJ failed to consider these
21  "limitations" in determining her residual functional capacity.  (JS at
22  10-14.)  For the following reasons, the Court disagrees.

23  The ALJ clearly considered Dr. Bagner's findings in his decision.
24  The ALJ noted these findings, together with Dr. Bagner's opinion that
25  Plaintiff would be able to interact with supervisors, handle a

26  _____

27      [6]  Furthermore, it is arguable that the first ALJ found that
    Plaintiff was limited only to "occasional" reaching, rather than no
28  reaching.  (See AR 46.)

11

moderate degree of stress, work with peers and the public, and attend work on a regular basis.  (AR 27.)

Plaintiff points out that the regulations require that the ALJ take into account the combination of a claimant's severe and non-severe impairments in reaching a disability decision, citing 20 C.F.R. § 404.1523.  Contrary to Plaintiff's view, the ALJ did so here and found that Plaintiff's non-severe mental impairment imposed "mild difficulties in maintaining concentration, persistence or pace" and nothing more.  (AR 28.)  That determination is supported by substantial evidence and will not be disturbed.

D.   The ALJ's Credibility Finding Requires Further Consideration

Plaintiff challenges the ALJ's finding that she was not fully credible, arguing that the ALJ failed to provide adequate reasons for discrediting her testimony.  For the following reasons, the case is remanded for further consideration of the credibility issue.

An ALJ must undertake a two-step analysis when considering a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The first step--whether the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged, *Smolen*, 80 F.3d at 1281-82--is not in dispute here.  At the second step, the ALJ must determine the claimant's credibility as to the severity of the symptoms.  *Id.* at 1282.  If, as is the case here, the claimant produces objective medical evidence of an impairment, shows that the impairment could be expected to produce the symptoms alleged, and there is no evidence of malingering, the ALJ can only reject the claimant's testimony concerning the severity of the symptoms by citing specific, clear, and convincing reasons for doing so.  *Id.* at 1283-84.

12

In making a credibility determination, the ALJ may take into account, among other things, ordinary credibility evaluation techniques and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that stiffness, aches, and pains in her hands, back, and legs last for approximately four hours each morning. (AR 593.) According to Plaintiff, it is only after that time has passed that is she able to "do things." (AR 593.) Plaintiff also testified that she cannot "be around people, or as I say, germs" when she has her chemotherapy infusion, which she receives once every six weeks. (AR 588.) Plaintiff wears a mask to prevent infection at those times. (AR 588.) Plaintiff further testified that she is weak for three days after each infusion. (AR 589.) She additionally testified that she is taking a number of medications to control the pain and swelling caused by her arthritis and migraines but that those medications, some of which she takes four times a day, make her drowsy. (AR 590.) She also testified that she spends her time laying down watching TV or reading, and that she had only been to church twice so far that year. (AR 595, 596.)

The ALJ gave the following reasons for finding that Plaintiff was not credible: (1) Plaintiff "alleged disability since September 1995, but admitted at the hearing, that she worked (part-time) in 2000 and 2001. It is noted that she failed to mention this to the consultative examiners."; (2) Plaintiff "told Dr. [Bagner] that she only smokes five [or] six cigarettes a day, but testified to smoking 1-1/2 packs a day."; and (3) Plaintiff's daily activities were inconsistent with her

allegations.  Specifically, Plaintiff's goddaughter reported that Plaintiff "cooks, shops, does household chores, drives her car, watches television, takes care of her son, and attends church services," and Plaintiff reported that she would go out to eat.  (AR 28.)  For the reasons set forth below, the Court finds that the ALJ's second and third reasons for rejecting Plaintiff's credibility are not supported by substantial evidence and the ALJ's first reason, though supported by the evidence, may not be enough to dismiss her testimony.

      1.   <u>Plaintiff's Statements Regarding Her Smoking Do Not Support</u>
          <u>The ALJ's Credibility Finding</u>

     According to the ALJ, Plaintiff testified that she smoked one-and-a-half packs of cigarettes a day but reported to Dr. Bagner that she smoked five or six cigarettes a day.  (AR 28, 263.)  The ALJ found that this inconsistency undercut Plaintiff's credibility.  The Court disagrees with this finding.

     First, the Court was unable to find any reference in the transcript to Plaintiff's smoking one-and-a-half packs of cigarettes a day.  Further, even if such testimony was in the transcript, it would not be all that convincing.  A review of the record makes it clear that Plaintiff's smoking habit varied quite a bit.  (*Cf.* AR 228 (Plaintiff smoking one pack a day on June 22, 2000), AR 209 (one pack a day on August 1, 2000), AR 263 (five or six cigarettes a day on September 25, 2001), AR 348 (one-and-a-half packs a day on July 15, 2002), and AR 28 (one-and-a-half packs a day on May 14, 2003).)  Thus, any testimony in May 2003 that she was smoking more (or less) was simply not inherently inconsistent with her statement to Dr. Bagner in September 2001 that she was smoking five or six cigarettes a day.  As such, this testimony does not constitute a clear and convincing reason

14

1   for discounting Plaintiff's credibility.  *See Robbins v. Social*

2   *Security Administration*, 466 F.3d 880, 884 (9th Cir. 2006)("While

3   *conflicting* or *inconsistent* testimony concerning [drug] use can

4   contribute to an adverse credibility finding," a single line of

5   "equivocal" testimony cannot do so)(emphasis added).

6           2.    The ALJ's Selective Depiction of Plaintiff's Daily

7                 Activities Does Not Support His Credibility Finding

8           The ALJ found that Plaintiff's daily activities, as reported by

9   Plaintiff and her goddaughter, conflicted with her hearing testimony

10  regarding her limitations.  Upon review of the record, however, the

11  ALJ's finding that Plaintiff "cooks, shops, does household chores,

12  drives her car, watches television, takes care of her son, and attends

13  church services," (AR 28), is not supported by substantial evidence in

14  the record.

15          Plaintiff's goddaughter, Donyelle Weary, submitted a Daily

16  Activities Questionnaire regarding Plaintiff on September 25, 2001.

17  (AR 129-34.)  The ALJ relied on the answers in this questionnaire to

18  conclude that Plaintiff was not truthful.  As set forth below,

19  however, the ALJ's characterization of this evidence was inaccurate:

20          (1) According to the ALJ, "Weary reported that

21          [Plaintiff] cooks."  (AR 28.)  In fact, Weary reported that

22          Plaintiff "sometimes" prepared her own meals, "depending on

23          how [the] day is going."  (AR 130.);

24          (2) The ALJ found that Weary reported that Plaintiff

25          "shops."  (AR 28.)  Weary reported that Plaintiff "may do

26          some grocery shopping," but "only once a month," and that

27          "someone usually helps her with shopping."  (AR 130.);

28

                                    15

(3) The ALJ found that Weary stated that Plaintiff "does household chores." (AR 28.) Weary reported that Plaintiff would "wash dishes, make up [the] bed, and wash clothes *every 4-6 weeks*." (AR 131)(emphasis added);

(4) Weary supposedly stated that Plaintiff "drives her car." (AR 28.) In fact, Weary checked the "yes" box to a more general question, "Does the applicant have a driver's license and drive a car?" Plaintiff herself testified that "only sometimes I drive" and that she needed the help of someone with a car to "get out." (AR 125.);

(5) The ALJ found that Weary reported that Plaintiff "takes care of her son." (AR 28.) In response to the question, "Is anyone dependent upon [Plaintiff] for care? If so, what assistance does the applicant give them?," Weary answered "Yes, her son. *She gives love and nurturing*." (AR 132)(emphasis added). In answer to the same question, Plaintiff answered, "My sons as [their] mother all that I can."[7] (AR 126.);

(6) The ALJ determined that Weary offered that Plaintiff "attends church services." (AR 28.) Weary reported that Plaintiff "participates by sitting on the pew once a week *or whenever she has the strength to get out of bed*." (AR 132.)(emphasis added);

---

[7] It should also be noted that at the time the questionnaires were completed Plaintiff's sons were 21 and 19 years old. (AR 262.)

16

1          (7) The ALJ found that Plaintiff "goes out to eat."
2   (AR 28.)  Plaintiff stated that "once or twice a week or not
3   at all," she would go to the "store or church or to eat,"
4   (AR 125), without specifying how often she did each of those
5   activities and without providing any further details.
6       Thus the ALJ's summary depicts a level of activity and ability
7   far beyond that actually reported by Plaintiff and Weary.  *See Reddick*
8   *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(reversing denial of
9   benefits where ALJ's credibility findings based on inaccurate
10  paraphrasing of record material).  In fact, Plaintiff's claimed daily
11  activities were minimal.  For this reasons, the Court concludes that
12  the ALJ's description of Plaintiff's daily activities is unsupported
13  by the record.
14      3.   Plaintiff's Failure to Inform The Doctors And The ALJ that
15           She Had A Part-Time Job May Not Constitute A Sufficient
16           Cause To Find Her Not Credible
17      The ALJ also found that Plaintiff's failure to volunteer to the
18  medical examiners and the ALJ that she worked part-time for six or
19  seven months in 2000-2001 casts doubt on her credibility.  Though this
20  is supported by the record it alone may not be enough to reject
21  Plaintiff's subjective symptom testimony and remand is required to
22  address that issue.
23      In 2000 and 2001, Plaintiff worked part-time as a food server at
24  a private school.  (AR 585-86.)  She earned $778.50 in 2000 and
25
26
27
28

17

1   $3,770.00 in 2001.  (AR 81.)  At $7.25 per hour, she would have worked

2   107 hours in 2000 and 520 hours in 2001.  That comes out to about 42

3   weeks of work, assuming 15 hours per week.[8]

4        Not only did Plaintiff not volunteer to the doctors who examined

5   her in conjunction with this case that she had worked (or was working)

6   part-time for six or seven months in 2000 and 2001, she denied to

7   these doctors that she was working at all.  (AR 247, 263.)  She also

8   failed to tell the ALJ that she had been working until he asked her

9   about it.  (AR 585.)  This lack of candor may be enough to reject her

10  testimony *in toto*, but the Court is not convinced that it would reach

11  that conclusion on this evidence alone.  More importantly, the Court

12  is not convinced that the ALJ would have reached this conclusion on

13  this evidence alone.  Thus, although the ALJ cited several reasons for

14  finding Plaintiff not credible--i.e., she failed to volunteer the fact

15  that she had worked part-time in 2000 and 2001, her statements about

16  smoking were inconsistent, and her daily activities were inconsistent

17  with her claimed impairments--the Court is not certain that the ALJ

18  would have found Plaintiff not credible if her failure to report her

19  part-time work was the only basis for that finding.  As such, the

20  Court concludes that on remand the ALJ should address this issue.

21       Plaintiff argues that the part-time work was not important to the

22  credibility finding because the ALJ concluded that it did not rise to

23  the level of substantial gainful activity.  (JS at 24.)  This argument

24  is not on point.  The ALJ asked Plaintiff directly, "When was the last

25

26       [8]  Plaintiff testified that she worked 10-15 hours per week and
    was paid minimum wage, $7.25 an hour.  (AR 586.)  Of course, it is
27  possible that Plaintiff was working more than 15 hours per week, or
    that she was paid more than $7.25 per hour, but the figures set out
28  above are based on Plaintiff's testimony.  (AR 586.)

time you worked?" (AR 585.) She told him it had been four or five years before (i.e., 1998 or 1999). (AR 585.) Her failure to testify about her work in 2000 and 2001 was deceptive. Her argument that it was not relevant because it was not substantial gainful employment is rejected. The ALJ did not ask Plaintiff when she last worked full time. He asked her when she last worked and, clearly, she failed to answer truthfully.

Plaintiff suggests that her failure to volunteer that she had worked in 2000 and 2001 was due to a lapse in memory. (JS at 31.) That is not what the ALJ found. And this Court does not review credibility determinations de novo and make independent findings about whether a witness who did not appear before the Court was lying or simply forgot. *See Bunnell v. Sullivan*, 947 F.2d 341, 345-6 (9th Cir. 1991)(en banc)(explaining ALJ's credibility findings are entitled to deference if they are supported by substantial evidence). The ALJ's interpretation of Plaintiff's testimony was supported by the evidence and was certainly reasonable. For that reason, his finding that Plaintiff lied when she omitted the fact that she worked in 2000 and 2001 will not be disturbed.

E.   Remand Is Appropriate

The determination whether to remand for further proceedings or for payment of benefits lies within the discretion of the Court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). In most circumstances in Social Security disability cases, remand is appropriate. *See Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th Cir. 2004). Remand may be productive where additional proceedings can remedy defects in the original administrative proceedings. *See Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003).

In this case, as explained above, it is not clear whether the ALJ would have rejected Plaintiff's testimony based solely on the fact that Plaintiff was not forthcoming about her part-time work in 2000 and 2001.  Depending on how he resolves this issue, his hypothetical questions to the vocational expert may be altered as well.  Therefore, this Court is not in a position to say with certainty whether the medical and other evidence of record compels the conclusion that Plaintiff is or is not disabled under the regulations.  Thus, remand for an award of benefits is not justified.  *See Harman v. Apfel*, 203 F.3d 1151, 1158 (9th Cir. 2000); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(holding that remand for reconsideration of credibility determination may be appropriate).  Instead, remand for further proceedings is necessary to enable the ALJ to re-address the issue of Plaintiff's credibility in light of the Court's ruling and conduct any further proceedings he deems necessary.

IV.

CONCLUSION

For the foregoing reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED:    June  21 , 2007.


PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\HARRIS, L 621\Memorandum.wpd

20